**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LEWIS WATERS,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | ) |
| | )   **Civ. Action No. 13-0049 (ESH)** |
| **CHARLES LOCKETT,** | ) |
| | ) |
| **Respondent.** | ) |
| _____ | ) |

**<u>MEMORANDUM OPINION</u>**

Petitioner Lewis Waters is serving a lengthy sentence for multiple convictions entered by the Superior Court of the District of Columbia.  He seeks a writ of habeas corpus on the grounds that (1) the District of Columbia Court of Appeals ("DCCA") deprived him of due process in failing to address certain issues on direct appeal and (2) his appellate counsel deprived him of his Sixth Amendment right to the effective assistance of counsel. (Pet. for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 [Dkt. # 1] at 7-10.)  In addition, petitioner claims that the DCCA deprived him of "the right to represent myself" on appeal of the denial of his post-conviction motion under D.C. Code § 23-110 (*id.* at 9), and that he was denied the effective assistance of counsel at trial.  (Am. Pet. [Dkt. # 8] at 1.)

The United States contends in its opposition that the petition should be summarily denied because the claims are "meritless" (United States' Opp'n to Pet'r's Pet. for a Writ of Habeas Corpus [Dkt. # 11] at 1-2), and petitioner has replied (Pet'r's Traverse of Resp't's Habeas Reply Brief [Dkt. # 13].  Upon consideration of the parties' submissions and the entire record, the Court finds no basis for issuing the writ and, thus, will deny the petition and dismiss the case.

## BACKGROUND

Petitioner, co-defendant Devonne J. Randolph, and an unnamed individual, were indicted on March 28, 2006, on twenty-six criminal charges, including assault with intent to kill while armed ("AWIK"), aggravated assault while armed, mayhem while armed, malicious disfigurement while armed, armed robbery, first-degree burglary while armed, and kidnapping while armed.  (Resp't's Ex. A.)  The charges arose from "events that occurred on May 25, 2005, at the home of Aaron Hargrove [who] was held at gunpoint[,] shot and stabbed multiple times," and robbed of cash.  ( Ex. C, *Randolph v. U.S*., Nos. 07-CF-601 and 09-CO-955, slip. op. at 1 (D.C. Jan. 5, 2011.) (hereafter "Slip op.")  In addition, "Hargrove's niece, Shana Hargrove . . ., was held captive and robbed of her cell phone and gloves."  (*Id*.)  Following a ten-day jury trial in September 2006, petitioner and Randolph were convicted of most counts of the indictment, and petitioner was sentenced on December 20, 2006, to a prison sentence of 81 years.  (Ex. B, Order.)

Petitioner noticed his appeal of the convictions on January 16, 2007, and filed a post-conviction motion pursuant to D.C. Code § 23-110 on December 29, 2008, while the appeal was pending.  (*See* Ex. B.)  Following the parties' briefing of the post-conviction motion, the sentencing judge, the Honorable Hiram E. Puig-Lugo, rejected petitioner's contested argument that he was denied the effective assistance of counsel at trial and denied the § 23-110 motion on July 21, 2009, without a hearing.  (*See id*. at 5-7.)  Petitioner noticed his appeal of this order, and the DCCA consolidated this appeal with petitioner's direct appeal filed jointly with Randolph. On January 5, 2011, the DCCA vacated certain convictions it determined were merged but otherwise affirmed petitioner's and Randolph's convictions.  (*See generally* Slip op.)  In addition, the DCCA considered and rejected petitioner's arguments in support of his ineffective

assistance of trial counsel claim and affirmed Judge Puig-Lugo's denial of petitioner's § 23-110 motion.  (*See id.* at 17-18.)  On November 30, 2011, the DCCA denied petitioner's motion to recall the mandate without discussion.  (Ex. F.)

## DISCUSSION

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is defined by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Premo v. Moore*, --- U.S. ---, 131 S.Ct. 733, 739 (2011).  Under the AEDPA, "a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been 'adjudicated on the merits in State court proceedings' unless the state-court adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' " *Greene v. Fisher*, --- U.S. ---, 132 S.Ct. 38, 42 (2011) (quoting 28 U. S. C. § 2254(d)(1)).  The standard "requires deference unless a state court fails to follow Supreme Court precedent." *Johnson v. Williams*, --- U.S. ---, 133 S.Ct. 1088, 1098 (2013) (citation omitted).  Furthermore, the AEDPA forecloses issuance of the writ unless the state-court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

## I.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Unlike prisoners convicted in state courts or those convicted in a United States District Court, "a District of Columbia prisoner has no recourse to a federal judicial forum [under either § 2254 or § 2255] unless [he shows that] the local remedy is inadequate or ineffective to test the legality of his detention." *Garris v. Lindsay*, 794 F.2d 722, 726 (D.C. Cir.), *cert. denied*, 479 U.S. 993 (1986) (internal footnote and quotation marks omitted); *see Byrd v. Henderson*, 119

F.3d 34, 37 (D.C. Cir. 1997) ("In order to collaterally attack his sentence in an Article III court a District of Columbia prisoner faces a hurdle that a federal prisoner does not.").  Hence, the Court's jurisdiction to review petitioner's convictions is limited to "those claims that could [not] have been raised through section 23-110" of the D.C. Code.  *Williams v. Martinez*, 586 F.3d 995, 999 (D.C. Cir. 2009) (quoting *Blair-Bey v. Quick*, 151 F.3d 1036, 1043 (D.C. Cir.1998)).  A claim predicated on trial counsel's ineffectiveness is cognizable under D.C. Code § 23-110.  *See Coleman v. Ives*, 841 F. Supp. 2d 333, 335 (D.D.C. 2012).

Petitioner's disagreement with the trial court's adverse ruling does not establish "cause" for reviewing the claim he describes as "defaulted" but yet "presented" in his post-conviction motion (Am. Pet. at 1), nor can it support a finding that his local remedy was inadequate or ineffective.  *See Martinez*, 586 F.3d at 321 (observing that "it is the inefficacy of the [local] remedy, not a personal inability to utilize it, that is determinative") (citation and internal quotation marks omitted); *Garris*, 794 F.2d at 727 ("[M]ere lack of success on [direct] appeal does not pave the way for collateral attack.") (footnote and citations omitted); *Wilson v. Off. of the Chairperson*, 892 F. Supp. 277, 280 (D.D.C. 1995) ("A petitioner may not complain that the remedies provided him by D.C. Code § 23-110 are inadequate merely because he was unsuccessful when he invoked them."); *accord Charles v. Chandler*, 180 F.3d 753, 756 (6th Cir. 1999) (collecting cases).  Consequently, the Court lacks jurisdiction to review petitioner's claim based on trial counsel's performance.

## II. REVIEW OF THE DCCA'S DECISION

Petitioner's grounds for relief based on the DCCA's alleged failure to address certain issues on direct appeal and to allow him to represent himself are, too, beyond this Court's jurisdiction because "the United States District Court is without authority to review final

4

determinations of the District of Columbia Court of Appeals in judicial proceedings." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).  Such is the exclusive province of the Supreme Court, *id*. (citing 28 U.S.C. § 1257), which denied petitioner's application for a writ of certiorari on October 3, 2011.  (Resp't's Ex. E.)

## III.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Since a claim of ineffective assistance of appellate counsel is not reviewable under D.C. Code § 23-110, this ground for relief is properly before the Court for consideration under "the standard set forth in 28 U.S.C. § 2254."  *Martinez*, 586 F.3d at 1002; *see id*. at 999 (explaining why this Court has jurisdiction to review a "federal habeas petition asserting ineffective assistance of appellate counsel after [the petitioner has] moved to recall the mandate in the D.C. Court of Appeals").  Petitioner asserts that appellate counsel had a "conflict of interest" that "prevented her from appealing and presenting meritorious issue [sic] to the appellate court."  Pet'r's Traverse at 3.  Consequently, "[a]ppellate counsel withheld two of Petitioner's most meritorious issues from the appeal of [his] 23-110" motion.  *Id*.

"[T]he constitutional predicate for [a] claim of ineffective assistance" based on a conflict theory requires a showing that counsel "actively represented conflicting interests" during, for example, the "multiple concurrent representation of individuals."  *Mickens v. Taylor*, 532 U.S. 162, 175 (2002) (limiting *Cuyler v. Sullivan*, 446 US. 335 (1980)).  Petitioner's claim stems from his appellate counsel's alleged comments speaking approvingly of trial counsel's performance (*see* Pet'r's Traverse at 3-4) and, therefore, is analyzed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Appellate counsel's performance is measured against the same constitutional standard as that applied to trial counsel's performance. *See Smith v. Robbins*, 528 U.S. 259, 289 (2000).  A court begins with the strong presumption that "counsel's conduct

falls within the range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  A criminal appellant does not have a constitutional right to have his appellate counsel raise every non-frivolous issue that he requests.  *Jones v. Barnes*, 463 U.S. 745, 754 n.7 (1983).

To prevail on a claim of ineffective assistance of appellate counsel, petitioner must show that appellate counsel's performance (1) was deficient and (2) prejudiced his appeal such that there was "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Id*. at 669.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 692.

Petitioner claims that appellate counsel's performance was deficient in the following ways:

- Counsel failed to argue in the appeal of the denial of his § 23-110 motion that trial counsel was ineffective for (1) "not objecting to the uncharged plan to rob Mr. Hargrove because the court believed Petitioner was actually charged with the robbery of Mr. Hargrove," and (2) failing "to object to the court's conspiracy instruction that allowed the jury to base the specific intent to kill with a knife upon finding Petitioner entered a conspiracy to rob."  (Pet'r's Traverse at 4; *see* Pet at 6-8.)

- Counsel "refused to appeal Petitioner's conviction of AWIK on the grounds of insufficiency of evidence."  (Pet'r's Traverse at 4.)

The DCCA considered and rejected the first point under *Strickland*, reasoning:

> Waters contends that his defense counsel should have objected to the
> Pinkerton conspiracy instruction because the jury was "asked to find a

conspiracy, the object of which, robbery, is based on no specific robbery" and because conspiracy was not a charge in the indictment.  However, any such objection by counsel would have been unavailing since the testimony about Waters's announced plan to rob Hargrove and the circumstantial evidence that Randolph and the third man agreed to that plan provided an ample evidentiary basis for a conspiracy instruction.  Moreover, the evidence adduced at trial made clear that the object of the alleged conspiracy was the taking of property from Hargrove by robbery or theft.  It is of no moment that the evidence showed no completed robbery of Hargrove and that appellants were not charged with actually robbing him.[1]

Slip op. at 18.  The Court finds this to be a reasonable application of *Strickland*, particularly with regard to the prejudice requirement.

As for the second point, petitioner has not suggested an argument counsel could have made in challenging the sufficiency of the evidence supporting the AWIK conviction, nor, as the post-conviction court determined with regard to trial counsel's performance, has he shown how he was prejudiced by appellate counsel's omission.[2]  In affirming the convictions that were challenged on sufficiency grounds, the DCCA relied upon an abundance of trial evidence going to petitioner's intent.  *See* Slip op. at 2-4; 9-12.  In one example the DCCA recounts from the trial testimony:

Waters asked Hargrove "where's your money"? Hargrove said it was in his car and told Waters to take whatever he wanted.  Waters then proceeded upstairs.  The other man remained in the basement with Hargrove.  After five to fifteen minutes, Waters returned and said, repeatedly, "I should just kill this nigger.  I should just go on and just kill this nigger."  Hargrove believed he was going to die but, preferring to die "on his feet like a man" charged for the gun.  At that point the third man passed the gun to Waters, who began shooting and continued until he emptied the gun.  Hargrove was shot in the hand, arm, face, and back of the head . . . .

---

[1]    Petitioner, Randolph and the unnamed individual were charged with two counts of robbing Shana Hargrove while armed.  (Resp't's Ex. A, Counts 19, 21.)

[2]    The First Count of the indictment read:  On or about May 25, 2005, . . . Lewis O. Waters . . .while armed with a pistol, assaulted Aaron Hargrove with intent to kill him."  Resp't's Ex. A. The Third Count charged petitioner with the same offense "while armed with a knife."  *Id.*  The jury convicted petitioner of "one count of assault with intent to kill (knife)."  Slip op. at 5.

Slip op. at 2.  In addition, Hargrove testified that during the robbery, petitioner ordered the unidentified man who was pointing a pistol at Hargrove to "kill him" if he "tries anything."  *Id*. at 11.  The DCCA observed from petitioner's own testimony that "Waters was carrying a pistol when he entered the house and Randolph knew Waters generally did so, permitting the jury to find both that Waters personally met the 'while armed' element of armed kidnaping and that Randolph would not have been surprised at Waters's use of a weapon to effectuate the assailants' scheme."  *Id*.  The DCCA noted that "[t]he government made clear throughout its theory that Randolph was the principal in the knife-related crimes and Waters (and/or the third man) was the principal in the gun-related crimes and . . . jurors were told that they must give 'separate consideration and return separate verdicts with respect to each defendant as to each count."  *Id*. at 15.  The DCCA was "satisfied that, as a whole, the court's instructions were adequate to inform jurors that to convict either appellant as an aider and abettor, they had to find that he had the mens rea [necessary state of mind] required for the offense."  *Id*.

Thus, even if counsel performed deficiently, no basis exists for finding that but for counsel's failure to challenge the sufficiency of the evidence supporting the AWIK conviction, the outcome of petitioner's appeal would have been any different.  It is reasonably safe to conclude from the DCCA's consideration of the trial evidence and the applicable law that it would have affirmed petitioner's AWIK conviction on "a *Pinkerton*, or co-conspirator, theory of liability," as it did in affirming Randolph's pistol-related kidnapping conviction though "the government adduced no evidence that he personally handled a gun."  Slip op. at 9-10 (discussing *Pinkerton v. United States*, 328 U.S. 640 (1946)); *see id*. at 10 ("We are satisfied that the government's evidence was sufficient to establish that there existed between Randolph, Waters, and the third assailant an agreement to steal from Hargrove, and that each man knowingly

participated in carrying out the agreement.") *and* n.7 (citing *Thomas v. United States*, 748 A.2d 931, 934, 936 (D.C. 2000) (explaining [] that every federal court that at the time had decided whether a *Pinkerton* instruction may be given when there is no conspiracy charge in the indictment had held that such an instruction to be proper).

## CONCLUSION

For the foregoing reasons, the application for a writ of habeas corpus is denied.  A separate Order accompanies this Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
DATE:  July 25, 2013                                    United States District Judge